# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| AON RISK SERVICES COMPANIES, INC., AON PLC, AND AON GROUP, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 19 C 7312 |
| v. | ) ) | Judge Jorge L. Alonso |
| ALLIANT INSURANCE SERVICES, INC., TARA BRUSEK, JAMES JANIC, THOMAS LUBAS, DANIELLE ROSS, JAMIE TAYLOR, JOSHUA VICK, AND MATTHEW WALSH, | ) ) ) ) ) ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Aon Risk Services Companies, Inc., Aon PLC, and Aon Group, Inc. (collectively "Aon") move this Court to enter a temporary restraining order against the named Defendants, pursuant to Fed. R. Civ. P. 65(b). For the reasons stated below, the Court grants in part and denies in part Aon's motion.

## I.  Background

Aon filed suit against Alliant Insurance Services, Inc. ("Alliant") and seven former Aon employees ("Defendant Employees")[1] who recently left Aon to work for Alliant. (*See generally* Compl., ECF No. 1.) The Defendant Employees worked for Aon's Construction Services Group ("Aon CSG"), which is a division of Aon Group, Inc. Aon CSG sells insurance-related products

---

[1] The seven Defendant Employees include: Tara Brusek, James Janic, Thomas Lubas, Danielle Ross, Jamie Taylor, Joshua Vick, and Matthew Walsh. Aon also alleges that five other Aon employees have left to join Alliant: Patrick Walsh, Theresa Lovell, Greg Melton, Dana Moriarity, and Kyle Goddard. Aon did not name these additional former employees as named Defendants but alleges generally that they were lured away from Aon by the named Defendants.

in the construction industry. Aon describes Alliant as its direct competitor in offering insurance brokerage services, including in the construction industry.

Aon alleges Alliant poached the Defendant Employees from Aon, and that prior to leaving for Alliant in late October 2019, the Defendant Employees took certain confidential, proprietary, and trade secret information. Aon alleges the Defendant Employees are now poaching other Aon employees as well as Aon clients and are using Aon's confidential, proprietary, and trade secret information to do so. Aon's complaint alleges eight counts: (1) violation of the federal Defend Trade Secrets Act against all defendants; (2) violation of the Illinois Trade Secret Act against all defendants; (3) breach of contract against Defendants Walsh, Ross, Taylor, Brusek, Lubas, and Janic for their alleged breach of employment agreements; (4) breach of fiduciary duty against Defendants Walsh, Ross, and Taylor; (5) aiding and abetting breach of fiduciary duty against Defendants Walsh, Ross, Taylor, and Alliant; (6) tortious interference with contract against Alliant; (7) tortious interference with prospective economic advantage against Defendants Walsh, Ross, Taylor, and Alliant; and (8) declaratory judgment relating to all Defendant Employees' Aon employment agreements. (*See generally* ECF No. 1.)

Aon has moved this Court to issue a temporary restraining order ("TRO"). (*See generally* Mot. for Temp. Restraining Order and Memo in Support, ECF Nos. 9 and 10.) Aon highlights specific bad acts by Defendants (described below) that Aon claims show the type of irreparable harm Aon has suffered and will continue to suffer absent entry of a TRO. Aon's proposed TRO enjoins Defendants as follows:

1. The Defendant Employees—and by extension, Alliant—are enjoined from violating their respective employment agreements, which includes:

    1) prohibiting Defendants from "directly or indirectly, calling upon, soliciting, accepting, engaging in, servicing or performing any business of the same type

  performed by Aon with respect to clients" that the Defendant Employees had any relationship with during the last twenty-four (24) months prior to their resignation;

  2) prohibiting Defendants from "soliciting, inducing, or causing" any Aon employee to leave Aon;

  3) prohibiting Defendants from "utilizing, divulging, disclosing or misusing" any Aon "confidential information," as defined by the Defendant Employees' Aon employment agreements; and

  4) requiring Defendants to immediately return all Aon confidential and trade secret information.

2. Defendants are required to preserve any and all information (documents, electronically-stored information, etc.) relevant to the factual allegations and claims in Aon's complaint.

3. Defendant Jamie Taylor is required to turn over her passcode to her Aon-issued iPhone.

4. Defendant Alliant is enjoined from soliciting or hiring *any* additional Aon CSG employees.

(*See* ECF No. 9 at 6-7.) Aon requests the TRO stay in place through the preliminary injunction hearing.

  Aon filed its complaint on November 5, 2019, and filed its TRO motion on November 18, 2019. Alliant filed a response opposing the TRO on November 20, 2019, (Resp., ECF No. 18.), and Aon filed a memorandum in further support on November 21, 2019 (Reply Memo., ECF No. 25.) The Court heard argument on the motion on November 21, 2019. (ECF No. 26.) The Court held another hearing on November 25, 2018, at which Alliant told the Court that all Defendants were willing to be enjoined from soliciting, inducing, or causing any Aon employee to leave Aon and that the Defendant Employees were willing to abide by the non-disclosure covenants in their employment agreements.[2]

---

[2] "Employment agreements" refers to the Restricted Stock Unit agreements which contain the three restrictive covenants at issue as well as other employment agreements that repeat these covenants (i.e., Walsh's LPP Agreement and other Defendant Employee's Non-Solicitation Agreements). (*See* ECF No. 1 at ¶¶ 77-105.)

**II.     Analysis**

To obtain a TRO, a movant must demonstrate: (1) a likelihood of success on the merits; (2) that it has no adequate remedy at law; and (3) that it will suffer irreparable harm if the relief is not granted. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002). If the movant makes such a showing, the Court then must consider the balance between the irreparable harm that the moving party will suffer if relief is denied and the harm that the nonmoving party will suffer if relief is improperly granted. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). Finally, the Court must consider the interests of non-parties in granting or denying the requested relief. *Id*. The more likely a plaintiff's success on the merits, the less the balance of harms needs to favor its side to justify relief, while a greater showing that the balance of harms favors the plaintiff may offset a lower probability of success on the success. *Abbot Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992).

    **1.     Likelihood of Success**

A movant "need not demonstrate a likelihood of absolute success on the merits. Instead, he must only show that his chances to succeed on his claims are 'better than negligible.'" *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046 (7th Cir. 2017) (quoting *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999)). "As the Seventh Circuit has explained, this is a relatively low bar." *Vendavo, Inc. v. Long*, 397 F. Supp. 3d 1115, 1129 (N.D. Ill. 2019).

Although not entirely clear from the briefing, Aon appears to rely on four of its claims in arguing it is entitled to its proposed TRO: (1) its trade secrets claims (Counts I and II); (2) its breach of contract claim (Count III); (3) its tortious interference with contract claim (Count VI); and (4) its declaratory judgment claim (Count VIII). (*See generally* ECF No. 10.) For purposes of

resolving the TRO, the Court need only address the likelihood of success on the trade secrets claims and the breach of contract claim.[3]

### A. Trade Secret Claims

As mentioned above, Aon brings claims under both the federal Defend Trade Secrets Act and the Illinois Trade Secrets Act. Because "the pertinent definitions of the two acts overlap," the Court analyzes the likelihood of success of the two claims together. *See Vendavo, Inc.*, 397 F. Supp. 3d at 1129 (analyzing claims together in ruling on preliminary injunction). For Aon to show that Defendants misappropriated a trade secret, Aon must demonstrate that (1) a trade secret existed; (2) it was misappropriated through improper acquisition, disclosure, or use; and (3) the misappropriation damaged the trade secret's owner." *Allied Waste Servs. of N. Am., LLC v. Tibble*, 177 F. Supp. 3d 1103, 1112 (N.D. Ill. 2016).

At this stage, Aon has put forth a sufficient showing that the information at issue here constitutes trade secrets. Aon alleges that, prior to leaving for Alliant, Defendant Employees took data compilations, proprietary tools, client information, client lists, intellectual property, and "insurance company intelligence." (ECF No. 10 at 5.) Courts have recognized information of this sort can constitute trade secrets. *See e.g., id*. ("Trade secrets can include customer lists that are not readily ascertainable, pricing, distribution, and marketing plans, and sales data and market analysis information.") (quotations omitted); *see also Vendavo, Inc.*, 397 F. Supp. 3d at 1131-36. Further, Aon has shown that it took reasonable steps to maintain the secrecy of this information, through the use of things like confidentiality agreements and password-protected networks and devices. (ECF No. 10 at 6.); *see also Vendavo, Inc.*, 397 F. Supp. 3d at 1136.

---

[3] Analysis of Aon's declaratory judgment claim is duplicative of the breach of contract claim, and is, thus, unnecessary. Aon also fails to sufficiently show how the emergency relief it seeks is related to its tortious interference claim.

Aon has also made a sufficient showing that certain Defendant Employees have misappropriated Aon's trade secrets. It is undisputed that certain Defendant Employees took sensitive information prior to leaving for Alliant. Defendants Lubas and Brusek downloaded large amounts of documents to USB drives in October 2019 prior to their departure (ECF No. 1 at ¶¶ 130-131); Defendant Walsh sought access to "detailed client specific premium data" for all Aon CSG clients just two weeks before he resigned. (*Id*. at ¶ 132.) And Aon claims Janic improperly downloaded his outlook contacts that contained confidential client contacts. (*Id*. at ¶ 129.) In further support of its position, Aon offers circumstantial evidence like the fact that Lubas and Brusek had no reason to download sensitive documents to USB drives when they could have accessed them through Aon's VPN network or that Janic downloaded the contact list only after meeting with Alliant. The Court notes that Aon "can rely on circumstantial evidence to prove misappropriation" because "direct evidence of theft and use of trade secrets is often not available." *Mickey's Linen v. Fischer*, No. 17 C 2154, 2017 WL 3970593, at *11 (N.D. Ill. Sept. 8, 2017). To be sure, Aon's claim is far from a slam dunk, but again, "the threshold for demonstrating a likelihood of success on the merits is low." *D.U. v. Rhoades*, 825 F.3d 331, 338 (7th Cir. 2016) (noting that district court "may have overstated [movant's] burden" by requiring it to show "more than a negligible chance" of prevailing on the merits of its claim).

### B. Breach of Contract

In its proposed TRO, Aon seeks to enforce three restrictive covenants found in the Defendant Employees' employment agreements with Aon, which include (1) a covenant not to solicit Aon's clients; (2) a covenant not to solicit Aon employees to leave Aon; and (3) a covenant not to disclose or use Aon's trade secrets or confidential information. (*See* ECF No. 1 at ¶¶ 85-86, 89; Exs. A-G.) Again, at a hearing on November 25, 2019, Alliant notified the Court that, for

purposes of the TRO, all Defendants agree to be bound by the second covenant and the Defendant Employees agree to be bound by the third covenant. Thus, the Court will only assess the likelihood of success on Aon's breach of contract claim premised on its non-solicitation of Aon clients covenant.

In relevant part, Aon's non-solicitation covenant states:

> [The Defendant employees] shall not, during the course of employment and for a period of two years thereafter, 'directly or indirectly, call upon, solicit, accept, engage in, service or perform' any business of the same type or kind as that performed by Aon for…Aon clients to whom [the Defendant Employees] provided services, either alone or with others, or had a business relationship with, or on whose account they worked or became familiar, or supervised directly or indirectly the servicing activities related to such clients, during the 24 months prior to their termination date." The covenant also extended to prospective clients that [the Defendant Employees] solicited within the last six months prior to their termination date.

(*See* ECF No. 1 at ¶ 85; *see also* Section 9(b) of Exs. A-G.)

As a preliminary note, the Court finds that Illinois law likely governs the employment agreements for Defendants Ross and Taylor. The parties agree that Illinois' choice-of-law principles apply to this issue. It is undisputed that the contracts at issue contain a choice-of-law provision selecting Illinois, and Illinois courts generally defer to such provisions. *See e.g., Prospect Funding Holdings, LLC v. Saulter*, 2018 IL App (1st) 171277, ¶ 27 (applying purchase agreement's choice-of-law provision without further analysis); *see also IFC Credit Corp. v. Rieker Shoe Corp.*, 378 Ill. App. 3d 77, 94 (1st Dist. 2007) (rejecting argument that Illinois' choice-of-law rules require another state's laws to apply because contract had clear provision selecting Illinois law). As the parties spent considerable time discussing, a court will only overrule the parties' choice-of-law provision if (1) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (2) its application would be contrary to a fundamental policy of a state which has a materially greater interest than

7

the chosen state. *Old Republic Ins. Co. v. Ace Prop. & Cas. Ins. Co.*, 389 Ill. App. 3d 356, 363 (1st Dist. 2009). The Court notes that Aon Group, Inc., which has its principal place of business in Illinois, is a party to each of the employment agreements at issue, and thus Illinois has a substantial relationship to the parties. Based on the foregoing reasons, at this juncture, Aon has certainly made a sufficient showing in support of its argument that Illinois law applies. *See Aon PLC, et al. v. Heffernan, et al.*, No. 16-cv-1924, Dkt. No. 28 (N.D. Ill. Feb. 10, 2016) (noting same as to choice-of-law issue at TRO stage).

Under Illinois law, a restrictive covenant will be upheld only if it is a "reasonable restraint." A restrictive covenant "is reasonable only if the covenant: (1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee; (2) does not impose undue hardship on the employee-promisor, and (3) is not injurious to the public." *Reliable Fire Equip. Co. v. Arredondo*, 2011 IL 111871, ¶¶ 16-17, 965 N.E.2d 393, 396. In determining whether the former employer has a "legitimate business interest" (i.e., the first prong of the test), courts consider "the totality of the facts and circumstances of the individual case…includ[ing] the near-permanence of customer relationships, the employee's acquisition of confidential information through his employment, and time and place restrictions. No factor carries any more weight than any other, but rather its importance will depend on the specific facts and circumstances of the individual case." *Id.* at ¶ 43.

Aon argues that its non-solicitation clause is subject to lower scrutiny because it prohibits certain specific activities, i.e., it prohibits only soliciting, accepting or engaging in business from former clients or servicing former clients for two years as opposed to a general non-competition agreement that totally bars competing with Aon. *See Abbott-Interfast Corp. v. Harkabus*, 250 Ill. App. 3d 13, 18 (2d Dist. 1993) ("A noncompetition agreement which restricts a specific activity,

such as soliciting particular clients, is subject to a lower degree of scrutiny than an agreement which prohibits the employee from engaging in any type of competition with the employer."). Aon also argues courts have upheld similar or identical covenants as reasonable under Illinois law. *See Aon Risk Servs. v. Cusack*, 34 Misc. 3d 1205(A) (N.Y. Sup. Ct. Dec. 20, 2011) (granting preliminary injunction and finding covenants enforceable under Illinois law); *see also Heffernan, et al.*, No. 16-cv-1924, Dkt. No. 28 (granting TRO enforcing non-solicitation covenant).

Alliant argues that the covenant is unreasonable because it is overbroad; Alliant takes particular issue with the fact that the covenant bars Defendant Employees from merely accepting business from former clients, even if those clients chose to come to the Defendant Employees unprompted. *See Abbott-Interfast Corp.*, 250 Ill. App. 3d at 17-19 (noting "it is more difficult for an employer to justify prohibiting its former employees from accepting orders from the employer's clients than merely prohibiting its employee from soliciting such clients").

The Court notes that Alliant may be correct that, as written, the covenant is impermissibly overbroad. Despite claiming the law is clear, the parties have not produced any controlling case on the issue. The cases Aon relies upon to argue that a covenant barring merely accepting business is enforceable are either easily distinguishable or unpersuasive. *See Howard Johnson & Co. v. Feinstein*, 241 Ill. App. 3d 828, 835 (1st Dist. 1993) (noting different considerations where covenant arose in the sale of business as opposed to regular employer-employee agreement); *Abbott-Interfast Corp.*, 250 Ill. App. 3d at 17-19 (ultimately remanding issue of enforceability of non-solicitation covenant); *Mickey's Linen*, No. 17 C 2154, 2017 WL 3970593, at *16-17 (enforcing non-solicitation clause that encompassed accepting business but parties did not dispute the provision); *Heffernan, et al.*, No. 16-cv-1924, Dkt. No. 28 (not providing any analysis on issue); *Cusack*, 34 Misc. 3d 1205(A) (N.Y. Sup. Ct. Dec. 20, 2011) (citing only *Feinstein* and

9

*Abbott-Interfast Corp.* and concluding it is "clear" under Illinois law that such covenants are enforceable).

Likewise, the cases Alliant cites are not dispositive. *See Hay Group, Inc. v. Bassick*, 2005 WL 2420415, at *6 (N.D. Ill. Set. 29, 2005) (stating in dicta that noncompete would be unenforceable because it prohibits former employee from working for *any* client of former employer, regardless of whether former employee worked on the client's account); *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 716 (N.D. Ill. 2009) (stating in dicta that it would be unjust to enjoin a former employee from working on a client's account after the client had already switched over); *Christian v. Veritiv Corp.*, No. 3:14-CV-00858-DRHSCW, 2014 WL 6657700, at *3 (S.D. Ill. Nov. 24, 2014) (applying Missouri law); *Bayly, Martin & Fay, Inc. v. Pickard*, 1989 OK 122, 780 P.2d 1168, 1170 (Okla. 1989) (applying Oklahoma law); *New Haven Tobacco Co. v. Perrelli*, 11 Conn. App. 636, 643, 528 A.2d 865, 869 (Conn. App. Ct. 1987) (applying Connecticut law).

But based on the foregoing cases, while it is unclear whether a non-acceptance covenant would be enforceable, a non-solicitation covenant is. Moreover, Aon provides sufficient allegations and evidence that Defendant Employees breached this covenant. Aon points to five Aon clients contacted by the Defendant Employees, at least three of which have left Aon for Alliant. Each of these instances involved the Defendant Employees actively soliciting former clients. Despite Alliant's attempts to explain away all of Defendant Employees' encounters and communications with these Aon clients, at this stage, Aon has "at least a negligible chance of success of the merits." *Carlson Grp., Inc. v. Davenport*, No. 16-cv-10520, 2016 WL 7212522, at *2 (N.D. Ill. Dec. 13, 2016) (quoting *D.U.*, 825 F.3d at 338).

**2.     Irreparable Harm / Inadequate Remedy at Law**

"Plaintiffs seeking preliminary relief must demonstrate that irreparable injury is *likely* in the absence of an injunction." *Pampered Chef*, 804 F. Supp. 2d at 803 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)) (emphasis in original). A plaintiff does not meet this standard where "money damages could make [it] whole again" should it prevail at trial. *See D.U.*, 825 at 338-39 ("the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm") (citation omitted); *see also Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 740 (7th Cir. 2013) ("the harm to the plaintiff also must be judged irreparable—meaning not fully compensable or avoidable by the issuance of a final judgment…For if the harm can be fully repaired in the final judgment, there is no reason to hurry the adjudicative process"). "A plaintiff may suffer irreparable harm if the nature of the loss makes monetary damages difficult to calculate." *E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 705-06 (7th Cir. 2005). A plaintiff may not, however, "obtain a preliminary injunction by speculating about hypothetical future injuries." *Id.*

Regarding its trade secrets claims, Aon correctly points out that there is a "presumption of irreparable harm to the plaintiff in cases of trade secret misappropriation." *Jano Justice Sys., Inc. v. Burton*, 636 F. Supp. 2d 763, 767 (C.D. Ill. 209). That presumption can be rebutted by the defendant. *Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 700 (N.D. Ill. June 28, 2004). Here, Alliant relies on its "onboarding process" to argue that all possible confidential and trade secret information has been taken from the Defendant Employees and that the Defendant Employees cannot access it. (*See* ECF No. 17 at 8-12.) Aon responds that it should not be forced to accept Alliant's assurances under the circumstances, and the Court agrees. Considering the type

and amount of materials that the Defendant Employees have admitted to taking, and because "it would be essentially impossible to determine the costs" of Alliant employees using any of these materials in direct competition with Aon, the Court finds there is a real risk of irreparable injury to Aon in the absence of a TRO. *Vendavo*, 397 F. Supp. 3d at 1144.

Regarding its breach of contract claim, the Court finds irreparable harm is likely if the Court does not enforce the non-solicitation covenant. Again, Aon can point to five Aon clients contacted by the Defendant Employees, at least three of which have left Aon for Alliant. Alliant argues that Aon has shown that any damage it may suffer by a potential breach of the non-solicitation covenant can be adequately compensated by money damages because Aon itself alleges in dollars how much business it has lost so far as a result of Defendant Employees' alleged actions. (ECF No. 17 at 6.) But given the Defendant Employees' relatively recent departure, the loss of business that Aon has suffered and may continue to suffer as a result of Defendant Employees' alleged actions "are unquantifiable at this time, and it is precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable.'" *Mickey's Linen*, No. 17 C 2154, 2017 WL 3970593, at *18 (citing *Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630, 632-33 (7th Cir. 2005)). Accompanying these unquantifiable losses are "other 'intangible' damages," such as the loss of Aon's competitive position in the industry or Aon's overall value to potential investors. *Id.*

3. **Balancing of Harms**

Having found a sufficient likelihood of success and risk of irreparable harm in connection with Aon's trade secrets claims and breach of non-solicitation covenant claim, the Court turns now to balancing between the irreparable harm that Aon will suffer if relief is denied and the harm that Alliant will suffer if relief is improperly granted. Regarding Aon's trade secrets claims, the Court

notes Alliant does not explain how it will suffer harm if the Court orders Alliant to return all of Aon's Confidential Information. Alliant claims that no one at Alliant—including the Defendant Employees—has access to the information that Aon wants returned, and to the extent such information has not been destroyed, the Court does not see any harm to Alliant in being ordered to return it.

Finally, regarding the non-solicitation of Aon clients covenant, Alliant argues that if the Court enters Aon's proposed TRO, Defendant Employees will suffer irreparable harm because they will wrongly be prohibited from working with their clients; Alliant adds that enforcing the covenant is also against the public interest because it denies such clients their free choice of who to work with and as such, is an overly burdensome restraint on trade. (ECF No. 17 at 7.) Alliant has a point, and the Court notes that this harm flows mostly from the covenant's language barring the Defendant Employees from merely "accepting" and "servicing" former clients, even where those clients choose on their own to take their business to the Defendant Employees. As noted above, it is unclear whether this portion of the covenant is enforceable under Illinois law.

Given Alliant's concerns—and the fact that the instances where Defendants have allegedly breached this covenant all involve Defendant Employees *actively soliciting* business from their former clients (as opposed to merely accepting business)—the Court will enter a TRO that bars soliciting business but does not bar merely accepting or servicing former clients. Illinois law generally allows for modification of restrictive covenants. *See e.g., Nw. Podiatry Ctr., Ltd. v. Ochwat*, 2013 IL App (1st) 120458, ¶ 56, 990 N.E.2d 347, 361 ("We recognize a court may modify a restrictive covenant that is overly broad to make it narrower.") Further, the employment agreements at issue contemplate and allow for such modification. (*See* ECF No. 1 at ¶ 89; *see also* Section 10(i) of Exs. A-G.) The Court does not take a position at this time whether the non-

solicitation covenant ultimately should or could be modified. Rather, the Court notes these general principles in declining to adopt Aon's broad language and opting instead for more narrow relief.

## III. Conclusion

Based on the foregoing, Aon's motion for a temporary restraining order [9] is granted in part and denied in part. Defendants are hereby enjoined as set forth in the accompanying temporary restraining order [31].

**SO ORDERED.**                                  **ENTERED: November 25, 2019**

**HON. JORGE ALONSO**
**United States District Judge**